PAYNE, J.,
for the Court:
PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment of the Grenada County Circuit Court of conviction of possession of a firearm by a convicted felon and sentence as an habitual offender of three years in the custody of the Mississippi Department of Corrections. Feeling aggrieved, Bradford raises the following issue for our review: whether the trial court erred in failing to sustain Bradford’s motion to suppress the gun obtained from the defendant as a result of an illegal search. After reviewing the briefs and record, we are unmoved by Bradford’s assignment of error. Accordingly, we affirm the conviction and sentence in this case.
FACTS
¶ 2. On December 28, 1996, Richard Ellis, the Parks and Recreation Director for the City of Grenada, arrived at the Grenada Police Department. As he exited his vehicle, he observed a young woman and two young children running toward him. Simultaneously, Ellis testified he heard an individual exclaim “Look at that man with the gun” and point toward Bradford. As Ellis looked beyond the woman and children approaching him, he saw Bradford chasing the trio with one hand to his side and the other concealed under his shirt. Ellis saw no weapon. Ellis entered the police department and alerted Grenada Police Officer Terry Morgan of the ongoing incident.
¶ 3. Officer Morgan testified that after he was alerted by Ellis about the man with a gun, he proceeded to investigate. On exiting the police station, Morgan noticed a group of individuals at the end of the street pointing and exclaiming, “Quick. Hurry. He’s beating her. He’s got a gun.” Officer Morgan went to the area where the people were pointing where he discovered Bradford standing over Mandy Rounds, his girlfriend, in an “aggressive posture.” As he approached, he could not see Bradford’s right hand, and when Bradford noticed Morgan approaching, he began making a “stuffing motion” in the front of his pants. Officer Morgan exited his patrol unit and ordered Bradford to the ground. Bradford complied. After a back-up officer, Jessie Gonzales, arrived Bradford was handcuffed. Officer Morgan inquired of Bradford if he were armed; Bradford denied being armed. However, a pat down search resulted in Officer Gonzales’s discovery of a loaded 9 MM pistol concealed near the ankle of Bradford’s right leg. Bradford was wearing sweat pants with elastic at the bottom. Gonzales seized the weapon, and Morgan secured it.
¶ 4. After the weapon was discovered, Officer Morgan advised Bradford that he was under arrest for possession of a concealed weapon by a convicted felon. Bradford was read his Miranda warnings. According to Officer Morgan, after Bradford was read his Miranda warnings, he volunteered that he should have disposed of the gun when he saw Morgan approaching the scene. After Bradford was taken to the police station, he was again read his Miranda warnings. Again, Bradford volunteered that the weapon was not his, but that it belonged to “my girl.” According to Officer Morgan, Officer Gonzales, and *423 Officer Green, a third officer involved later at the scene and with the processing of Bradford at the police station, Bradford inquired as to when the weapon would be returned to him.
¶ 5. Mandy Rounds, Bradford’s significant other, offered a much different version of events. Rounds testified that she and her children were going to get something to eat, and Bradford was talking with a neighbor. According to Rounds, her son snatched money from her daughter’s hand and began to run. Rounds testified that she and her daughter gave chase and Bradford then yelled for them to wait on him. Rounds testified that when Bradford caught up with the trio, Bradford indicated that he had heard a comment from someone on the street about a gun. Rounds testified she told Bradford that the 9 MM weapon was in her purse.
¶ 6. Rounds testified that Officer Morgan ordered Bradford to the ground, searched him and found nothing on Bradford’s person. Rounds testified that the weapon was on the ground by her. Rounds maintained that Officer Morgan retrieved the weapon from the ground by her. Rounds testified that Officer Green inquired of her son whether Bradford had the gun and her son replied in the negative, and that she told Officer Green that she had the gun. She took the gun from her purse when she spotted the police officer approaching because she did not want to be caught with the unregistered weapon. Rounds testified that she and Bradford had not been fighting and that he was in no way threatening her. Further, Rounds disputed the testimony that Bradford was wearing sweat pants, insisting that he was wearing loose fitting Army-style pants that evening. Lastly, Rounds maintains that Bradford was never given a recitation of his constitutional rights.
¶ 7. Finally, Bradford took the stand in his own defense. Bradford corroborated Rounds’s version of events. Bradford maintained that Officer Morgan had possession of the weapon before Officer Gonzales arrived on the scene. Bradford says he was not provided his Miranda warnings until after he arrived at the police station for booking.
¶ 8. On rebuttal for the prosecution, Lillian Willis testified that on the evening in question she was at Grenada Municipal Court. She witnessed Bradford chasing Rounds and two children with a weapon held to .his right side. Willis maintains that when Bradford caught up with Rounds, he put the gun to her head.
ANALYSIS
¶ 9. Bradford maintains that the trial court erred in denying his motion to suppress the 9 MM pistol because it was illegally seized without probable cause. We disagree. The law in Mississippi is clear with regard to probable cause: “[t]he test for probable cause in Mississippi is the ‘totality of the circumstances test’ of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).” Haddox v. State, 636 So.2d 1229, 1235 (Miss.1994). In Gates, the U.S. Supreme Court elaborated on the totality of the circumstances approach: This totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific “tests” be
satisfied.... Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a “practical, nontechnical conception.” (citing Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). “In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Id. at 175, 69 S.Ct., at 1310.
Gates, 462 U.S. at 230, 103 S.Ct. 2317 (1983). Applying the totality of the cir *424 cumstances to the actions of the police officers in the ease sub judice, it is readily clear that the officers acted within the scope of their authority in detaining Bradford and seizing the weapon found on his person.
¶ 10. As established in the testimony, Ellis observed Bradford giving chase to Rounds, and he heard someone exclaim that Bradford was chasing Rounds with a gun. Ellis then relayed this information to Officer Morgan. Officer Morgan proceeded to investigate. On viewing Bradford standing over Rounds in an offensive, threatening position and on observing his making a stuffing motion into the front of his pants coupled with the knowledge supplied him by Ellis, Officer Morgan and his colleagues had probable cause to detain Bradford and search his person.
¶ 11. Accordingly, we affirm the conviction and sentence in this case.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION AS A HABITUAL OFFENDER OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000 IS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY PREVIOUS SENTENCE. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST GRENADA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.